Whaley, Judge,
delivered the opinion of the court:
. The plaintiff on July 29, 1931, entered into a written contract with the defendant whereby he agreed “to render all the services required in the preparation of sketches, estimates, designs, working drawings, specifications, detail drawings, assignment plans, etc., and/or the changes therein required to be made in connection with the erection and completion of” a post office at Patchogue, New York, and to do certain other work incident to that of an architect.
Immediately after the contract was entered into the plaintiff proceeded with the work and from time to time made trips to Washington for consultation purposes with the office of the Supervising Architect of the Treasury Department and to see the officials of the Post Office Department, conferring with them on the tentative plans which he had prepared. After the tentative plans and sketches had been revised, the plaintiff proceeded with the drawing of the cabinet sketches and, when these tentative plans and cabinet sketches had been approved, he was authorized to proceed with the working drawings. These working drawings were developments of the tentative drawings and cabinet sketches on a more elaborate scale and showed the architect’s plans perfected in detail. The working drawings were submitted to the proper officers, and, after certain revisions had been made, were approved by the defendant on April 30, 1932. Subsequently bids were invited for the construction of the Post Office building according to the plans and specifications designed and made by the plaintiff and a contract was executed for the erection of the building in the sum of $92,-9/5.00 on August 5, 1932.
This suit is brought by the plaintiff to recover compensation for the items of revision and changes made by the plaintiff'which he alleges he was required to make after the preliminary sketches had been approved.
The contract provides:
The party of the second part further covenants and agrees to revise the preliminary sketches to meet the further requirements of the Secretary of the Treasury, if called upon *681 by him to do so, and without additional cost to the party of the first part; and after the approval of the preliminary sketches by the party of the first part to make such changes in the drawings, specifications, etc., as may be directed from time to time by the Secretary of the Treasury, for which changes such just compensation shall be made as may be agreed upon between the parties hereto or in case no agreement is made in advance the Secretary of the Treasury will determine the amount.
The plaintiff filed with the Secretary of the Treasury a list of claims for changes and alterations made by him in the working drawings and, after an examination, four of the items were allowed, and the plaintiff' has received just compensation for them. The rest of the claims were denied and the Secretary of the Treasury has refused to fix any amount for this additional service on the ground that the alterations and changes required came within the spirit of the contract.
The plaintiff has brought suit on twenty items involving changes (which are set out in Finding 9 and need not be set out in detail here) for which he claims extra compensation and on which he claims no compensation was allowed, although these changes were made subsequent to the approval of his preliminary sketches. No compensation was agreed upon between the parties under the terms of the contract.
Examining these claims we find that item 14, which involves “changes in details to conform with special usage of department of which plaintiff had not been advised”, was not a variance from the preliminary sketches. It did not involve a change of plan but was merely a completion of appropriate working drawings or an elaboration thereof and was not such a change of the drawings for which plaintiff would be entitled to extra compensation.
Item 16, “change of marquise” was clearly within the terms of the contract and was not a change for which extra compensation should be received. The plaintiff was instructed that the clearance of the marquise should be twelve feet, and the preliminary sketches and the working drawings showed it less than twelve feet. The plaintiff had written instruc *682 tions as to the height of this clearance, and his failure to provide for it in the working drawings was his own mistake or oversight. There can be no' recovery for this item.
There are three claims, numbers 18, 19, and 20 (see Finding 9), which were never presented to the Secretary of the Treasury, and he has never had an opportunity to pass on these items as required by the contract. Therefore, they can not be considered.
The other items from 1 to 18, inclusive, and items 15 and IT (see Finding 9), were distinct departures from the instructions received by the plaintiff and constituted changes made, or caused to be made, in the working drawings, and which were required by the defendant’s officers because they were better suited for the purposes of the postal facilities at the place at which this building was to be erected. They were not such changes as were necessary to bring the building within the estimated cost. All of these items were changes deemed by the defendant necessary to be made in order to facilitate the postal service and the requirements of the service, but all of them were material changes of the plans and were in no way incidental to the clarification or explanation of the working drawings. When these items were submitted to the Secretary of the Treasury for him to fix the amount due plaintiff, no amount having been agreed on previously, he declined to pass on the amount on the ground that these items fell within the spirit of the contract. The fixing of the amount was a question of fact, and this the Secretary of the Treasury has failed expressly to do. Whether the items fail within or without the terms of the contract for which extra compensation should be made is a question of law, and, in our judgment, these items are clearly ones for which the plaintiff should receive extra compensation. The only evidence in the case as to the value of the service for these respective items is that furnished by the plaintiff, and, therefore, we find the reasonable cost to the plaintiff, including his overhead, for these items, numbers 1 to 13, inclusive, and 15 and IT, to be $354.88. The plaintiff is entitled to recover this amount for these items.
In addition to the items above mentioned, the plaintiff claims compensation for himself and services of a structural *683 engineer, and a heating and electrical engineer, in the sum of $1,073.00. Plaintiff places the value of his own services for 50 hours at $7.50 per hour, plus 100% overhead. There is nothing in the evidence to show how these services were allocated or to which item or items they were applied. This is just a blanket claim without evidence to show to what items the plaintiff’s services or the services of the engineers were allocated. The plaintiff has been paid for four extra items by the department and there are 15 other items for which he should recover, yet there is nothing to show that the services rendered by the plaintiff and these engineers were not applied to the items already allowed by the Treasury Department or those now under consideration or those for which no extra compensation can be recovered. No attempt has been made to particularize them and apply them to any item. A general claim of this nature can not be considered and allowed when, under the terms of the contract, compensation only shall be allowed for changes made upon the working drawings and each change must be submitted to the Secretary of the Treasury and he shall fix the amount of compensation. There can be no recovery on these items.
The plaintiff also claims $900.00 additional compensation as part of a fixed fee provided in the contract, alleging that, had the contract been awarded to the first bidder, the Economy Act of 1932 would not have been in effect and, therefore, the amount of the cost of the building on which plaintiff’s fee was based would have been so much larger that he would have received the additional sum of $900.00. The contract provided that the plaintiff should receive a fee of 4%% on the construction cost including models “as shown on the books of the Supervising Architect’s office” but not including the cost of the site, movable furniture, etc. The plaintiff has been paid the full percentage on the cost as shown by the architect’s books. There can be no recovery on this item.
The plaintiff is entitled to recover the sum of $354.88. It is so ordered.
Williams, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.